UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:22-cr-00038-JAW-1 |
| | ) | |
| TOMAS JOHNSON | ) | |

**ORDER ON MOTIONS TO REDUCE SENTENCE AND TO PAUSE
RESTITUTION PAYMENTS**

A federal inmate serving concurrent sentences for firearm- and drug-related convictions filed two motions: (1) a motion to reduce his sentence by twenty-four months for his drug-related offense; and (2) a motion to pause his restitution payments. Because the defendant has not demonstrated extraordinary and compelling reasons justifying a reduced sentence, the court dismisses his motion without prejudice. The court also dismisses without prejudice the defendant's motion to pause his restitution payments. Although the basis for the defendant's motion to pause his restitution payments is not entirely clear, the court concludes that dismissal is warranted either because the relevant statute does not authorize the requested relief or because the court lacks jurisdiction to review the motion because the defendant must file a petition for habeas corpus in the district where he is incarcerated, which is outside the District of Maine.

## I.    BACKGROUND

On October 28, 2021, the Government filed a criminal complaint against Tomas Johnson, alleging that on or about October 20, 2021, Mr. Johnson, "knowing he had previously been convicted of . . . crimes punishable by a term of imprisonment exceeding one year . . . knowingly possessed in and affecting commerce a firearm," in

violation of 18 U.S.C. §§ 922(g)(1). *Crim. Compl.* at 1 (ECF No. 3).  On March 23, 2022, a federal grand jury indicted Mr. Johnson on a total of five criminal counts: (I) "Felon in Possession of a Firearm," on or about October 20, 2021, in violation of 18 U.S.C. § 922(g)(1); (II) "Theft from a Federally Licensed Firearms Dealer," on or about October 24, 2021, in violation of 18 U.S.C. § 922(u); (III) "Possession of a Stolen Firearm," on or about October 28, 2021, in violation of 18 U.S.C. § 922(j); (IV) "Possession with Intent to Distribute Cocaine Base," on or about October 28, 2021, in violation of 21 U.S.C. §§ 841(a)(1); and (V) "Possession of a Firearm in Furtherance of Drug Trafficking," on or about October 28, 2021, in violation of 18 U.S.C. § 924(c)(1)(A).  *Indictment* at 1-3 (ECF No. 24).

On April 27, 2023, Mr. Johnson appeared before the Court and pleaded guilty to Counts I-IV of the Indictment.  *Min. Entry* (ECF No. 68); *Agreement to Plead Guilty* (ECF No. 65).  At the sentencing hearing on December 18, 2023, the Court imposed concurrent sentences of 120 months on Counts I-III and 144 months on Count IV, three years of supervised release on all counts to be served concurrently, no fine, restitution in the amount of $16,580.83 on Count II, and a $400 special assessment. *Min. Entry* (ECF No. 97); *J.* (ECF No. 101); *Statement of Reasons* (ECF No. 102).  At the close of the sentencing hearing, the Government made an oral motion to dismiss Count V against Mr. Johnson, which the Court granted.  *Oral Mot.* (ECF No. 98); *Oral Order* (ECF No. 99).

On July 9, 2024, Mr. Johnson, appearing pro se, filed a motion for sentence reduction and a supporting brief, arguing for reductions in his sentence of

2

incarceration pursuant to Amendments 814 and 821, respectively, to the United States Sentencing Guidelines (U.S.S.G.).  *Mot. for Reduction in Sentence Pursuant to Section § 3582(c)(1)(A), under Retroactive Amend. 814, which Revises the "Other Reasons" Category* (ECF No. 111); *id.*, Attach. 1, *Supp. Brief in Support of Retroactive Amend. 821.*  On December 26, 2024, the Court dismissed Mr. Johnson's motion for sentence reduction, concluding that he had failed to exhaust his administrative remedies as to his Amendment 814 claim and that Amendment 821 did not justify a sentence reduction in his case because the Court applied the revised Guidelines at the time of his sentencing and therefore Amendment 821 would not lower his sentence under the applicable guidelines range.  *Order on Mot. to Reduce Sentence* (ECF No. 116); *Order Regarding Mot. for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2)* (ECF No. 117).

On October 27, 2025, Mr. Johnson filed another motion to reduce his sentence. *Mot. for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(B) for Expansion of "Other Reasons" Warranting a Sentence Reduction* (ECF No. 119) (*Def.'s Mot.*).  On November 10, 2025, the Government filed their response, opposing Mr. Johnson's motion.  *Gov't's Resp. in Opp'n to Def.'s Mot. to Reduce Sentence* (ECF No. 120) (*Gov't's Opp'n*).  On November 25, 2025, Mr. Johnson filed his reply.  *Tomas Johnson Resp. to Gov'ts Opp'n to Mot. to Reduce Sentence* (ECF No. 121) (*Def.'s Reply*).

On May 5, 2026, Mr. Johnson filed a motion to pause his restitution payments. *Mot. to Pause Restitution Payments* (ECF No. 124) (*Def.'s Restitution Mot.*).  On June 1, 2026, the Government filed its response, opposing Mr. Johnson's motion.  *Resp. by*

*United States in Opp'n to Def.'s Mot. to Pause Payment of Restitution* (ECF No. 127) (*Gov't's Opp'n to Restitution Mot.*).  Mr. Johnson did not file a reply.

## II.   THE PARTIES' POSITIONS

### A.   The Motion to Reduce Sentence

#### 1.   Tomas Johnson's Motion to Reduce Sentence

Mr. Johnson moves to reduce his sentence under Count IV from 144 months to 120 months, concurrent with his sentence under Counts I-III.  *Def.'s Mot.* at 6.  Mr. Johnson submits three grounds justifying a reduced sentence.  First, he argues his 144-month sentence under Count IV is too high, asserting that his presentence investigation report's guideline calculation "was or might have been calculated wrong."  *Id.* at 3.  Mr. Johnson cites the sentence imposed on a defendant with a much higher converted drug weight in a different case in this District, suggesting that his own sentence is disproportionate to his offense and further challenges the four-point enhancement he received possession of a firearm in connection with a felony offense under Count IV, arguing that the Government cannot "show concrete evidence of [his] control over or possession" of the firearms related to his conviction because "the mere presence of fingerprints does not automatically imply possession" and thus did not support the four-point enhancement imposed at sentencing.  *Id.* at 3-4.  Second, Mr. Johnson states that his family situation also supports a sentence reduction, because his mother and grandmother are sick and that he experienced the "loss his father, brother, and his ex-girlfriend's son" while he has been incarcerated.  *Id.* at 5.  Third, Mr. Johnson submits that his exemplary rehabilitation and continued education

during his period of incarceration, including coursework in drug abuse education, pursuing his GED, maintaining two jobs, and serving as a suicide watch companion, demonstrate his "sincere desire to change [his] life with a goal to become a contributing member of society." *Id.* at 5-6.   Finally, Mr. Johnson argues his requested  sentence reduction is consistent with the Sentencing Commission's policy statements and the 18 U.S.C. § 3553(a) factors.  *Id.*

### 2.      The Government's Opposition

The Government opposed Mr. Johnson's motion on several grounds.  First, it argues Mr. Johnson failed to exhaust his administrative remedies.  *Govt's' Opp'n* at 6-8.  Second, Mr. Johnson's motion does not establish extraordinary and compelling reasons warranting a sentence reduction.  *Id.* at 8-10.  Third, Mr. Johnson fails to establish that the § 3553(a) factors weigh in favor of a reduced sentence.  *Id.* at 10-11.  The Government asks that this Court dismiss Mr. Johnson's motion without prejudice or deny the motion on the merits.  *Id.* at 11.

### 3.      Tomas Johnson's Reply

In his reply, Mr. Johson reiterates and elaborates on his motion's challenge to the propriety of sentence but does not respond to the Government's arguments. *Def.'s Reply* at 1-2.

### B.      The Motion to Pause Restitution Payments

### 1.      Tomas Johnson's Motion to Pause Restitution Payments

Mr. Johnson also asks the Court to pause his restitution payments until after serving his sentence, explaining that, despite his best efforts to meet his payment

obligations, his support system is having a hard time in their personal lives and the hours he needs to work to earn enough to make his payments conflicts with the time required to earn his GED and complete other programs. *Def.'s Restitution Mot.* at 1.

Mr. Johnson's motion also appears to reiterate his request for a 24-month reduction in his sentence, consistent with his October 27, 2025 motion for sentence reduction. *Id.* Mr. Johnson appears to ask the Court to grant his motion so that he may enroll in the Residential Drug Abuse Treatment Program (RDAP). *Id.*

### 2.    The Government's Opposition

The Government opposes Mr. Johnson's motion to pause his restitution payments and urges the Court to deny the motion because Mr. Johnson has failed to exhaust his administrative remedies and because any such motion to pause payment of restitution must be brought as a petition for habeas corpus in the district of confinement. *Gov't's Restitution Opp'n* at 3-4. As for Mr. Johnson's renewed request to reduce his sentence, the Government opposes his motion for the reasons stated in their November 10, 2025 opposition. *Id.* at 4-5.

### 3.    Tomas Johnson's Reply

Mr. Johnson did not file a reply.

## III.    DISCUSSION

### A.    Motion to Reduce Sentence

#### 1.    Applicable Law

"Subject to limited exceptions, a district court may not reduce a sentence that it has imposed." *United States v. Duluc-Méndez*, 156 F.4th 55, 60 (1st Cir. 2025)

(citing 18 U.S.C. § 3582(c)).   One such exception lies in 18 U.S.C. § 3582(c)(1)(A), which permits a district court to reduce a term of imprisonment when (1) extraordinary and compelling reasons warrant such reduction; (2) the reduction is consistent with applicable United States Sentencing Commission policy statements; and (3) under the particular circumstances of the case, the applicable § 3553(a) factors warrant a reduced sentence. *United States v. Cruz-Rivera*, 137 F.4th 25, 28 (1st Cir. 2025).   "A district court may grant compassionate release only if the defendant satisfies each of these steps," *Duluc-Méndez*, 156 F.4th at 60 (citing *United States v. D'Angelo*, 110 F.4th 42, 48 (1st Cir. 2024)), and the defendant bears the burden of showing they are entitled to a reduced sentence. *United States v. Curtis*, No. 1:14-cr-00140-JAW, 2020 U.S. Dist. LEXIS 102045, at *12 (D. Me. June 11, 2020) (citations omitted).

Before a court considers a defendant's motion to reduce sentence, it must determine whether the defendant has fully exhausted their right of administrative appeal or thirty days have lapsed from when they requested the warden of their facility to file a request for sentence reduction on their behalf.   18 *See* U.S.C. § 3582(c)(1)(A); *see also United States v. Cain*, No. 1:16-cr-00103-JAW, 2021 U.S. Dist. LEXIS 20672, at *9-10 (D. Me. Feb. 3, 2021).   These requirements are mandatory. *See United States v. Lugo*, No. 2:19-cr-00056-JAW, 2020 U.S. Dist. LEXIS 63673, at *8 (D. Me. Apr. 10, 2020).

7

###     2.    Administrative Exhaustion

The Government argues Mr. Johnson's motion should be dismissed for failing to exhaust his administrative remedies. *Gov't's Opp'n* at 6-8. Although Mr. Johnson's motion does not directly address administrative exhaustion, he provides a June 24, 2025 Bureau of Prisons (BOP) decision rejecting his April 6, 2025 request for sentence reduction release based on medical circumstances. *See Def.'s Mot.*, Attach. 6, *Inmate Req. to Staff Resp.* at 1. According to the Government, because Mr. Johnson's request to the BOP presented different grounds than his current motion, he has failed to exhaust his administrative remedies. *Gov't's Opp'n* at 6-8. The Government argues administrative exhaustion under § 3582(c)(1)(A) is issue specific, requiring Mr. Johnson to present the same or similar grounds for sentence reduction to the BOP before filing his motion in federal court. *Id.* Mr. Johnson's reply did not respond to the Government's argument or explain the discrepancy between the grounds for his sentence reduction request that BOP rejected on June 24, 2025 and the stated grounds in his motion before this Court.

As the Court previously explained to Mr. Johnson in its December 26, 2024 order dismissing his first motion for compassionate release, First Circuit precedent and the caselaw in this District reflect a consensus that administrative exhaustion is mandatory unless the Government waives or concedes exhaustion. *Order on Mot. to Reduce Sentence* at 8 (citing caselaw); *see also* 18 U.S.C. § 3582(c)(1)(A); *Curtis*, 2020 U.S. Dist. LEXIS 102045, at *12 (The Defendant "has the burden of showing that he is entitled to a sentence reduction") (citations omitted); *Cain*, 2021 U.S. Dist. LEXIS

20672, at *10-11 ("Successive compassionate release motions must independently satisfy the exhaustion requirement") (citations omitted).

However, the question of issue-specific exhaustion remains unresolved in the First Circuit. *See United States v. Texeira-Nieves*, 23 F.4th 48, 53 (1st Cir. 2022) ("The question of whether and to what extent issue exhaustion applies to judicial review of compassionate-release motions is freighted with uncertainty—but we need not resolve that question today"); *accord United States v. Waite*, No. 2:18-cr-00113-GZS, 2022 U.S. Dist. LEXIS 133073, at *5 (D. Me. Jul. 27, 2022) ("The question of whether 'issue exhaustion' applies in the context of compassionate release remains an open question in the First Circuit").

Only two appellate courts have issued a published opinion squarely addressing this question. Each reached different conclusions. *See United States v. Ferguson*, 55 F.4th 262, 268-269 (4th Cir. 2022); *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). In *Ferguson*, the Fourth Circuit concluded § 3582(c)(1)(A) does not require issue exhaustion. 55 F.4th at 268-269. In *Williams*, the Seventh Circuit ruled that to proceed with a motion for compassionate release in a district court, a defendant "is required to present the same or similar ground for compassionate release in a request to the [BOP] as in a motion to the court." *Williams*, 987 F.3d at 703.[1]

---

[1]  The unpublished decisions of other circuits have also interpreted the statute to require issues-specific exhaustion. *See United States v. Gieswein*, 832 F. App'x 576, 578 (10th Cir. 2021) (unpublished) (Because defendant's "request to the warden did not include COVID-19 as a reason for compassionate release," he has failed to exhaust his administrative remedies, "and his COVID-19 justification was properly dismissed") (citation omitted); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("[The defendant] was required to exhaust [two specific arguments for compassionate relief] by filing a request with [BOP], but he failed to do so. Because the statutory language is mandatory—that a prisoner must exhaust their BOP remedy before filing in district court—we must enforce this procedural rule since the Government did not waive the exhaustion issue on appeal").

Without an authoritative ruling from the First Circuit and considering § 3582(c)(1)(A)'s exhaustion requirement is a non-jurisdictional claim-processing rule, *see Texeira-Nieves*, 23 F.4th at 53, this Court has elected in other cases to proceed to the merits of the defendant's motion. *United States v. Gadson*, 2:19-cr-00122-JAW-2; 2:21-cr-00163-JAW-1, 2025 U.S. Dist. LEXIS 63798, at *31-32 (D. Me. Apr. 2025) (addressing merits of the defendant's claim even though his compassionate release claim would have been barred if issue exhaustion applied in the First Circuit); *United States v. Doe*, No. 1:17-cr-00091-JAW-1, 2024 U.S. Dist. LEXIS 205398, at *20-21 (D. Me. Nov. 12, 2024) (same); *cf. United States v. Ayala-Vázquez*, 784 F. Supp. 3d 500, 506 (D.P.R. 2025) (reviewing a defendant's compassionate release motion on the merits after concluding he failed to exhaust his administrative remedies). The Court will do the same here.

---

The trend among the lower courts also favors interpreting the statute to require issue-specific exhaustion. *See, e.g.*, *United States v. DeSciscio*, Crim. Action No. 88-00239-2 (RK), 2026 U.S. Dist. LEXIS 98250, at *4-5 (D.N.J. May 4, 2026) ("[M]any courts within the Third Circuit . . . have concluded that 'issue exhaustion' applies") (collecting cases); *United States v. Shelton*, No. 3:21-cr-00224-AN-3, 2026 U.S. Dist. LEXIS 22012, at *10-16 (D. Or. Feb. 3, 2026) (joining the four other district courts within Ninth Circuit to require issue exhaustion against one district that did not); *United States v. Young*, Crim. No. 06-0277-WS, 2022 U.S. Dist. LEXIS 85099, at *5-6 (S.D. Ala. May 3, 2022) ("The Court agrees that the defendant's failure to present these conditions to the warden precludes him from relying on them on his pending motion, as cases within and outside the Eleventh Circuit have ruled") (collecting cases); *United States v. Johnson*, 619 F. Supp. 3d 81, 88 (D.D.C. 2022) ("To satisfy the exhaustion requirement, the defendant must present the same factual basis for the compassionate-release request to the warden that the defendant presents to the court") (internal quotation marks and citation omitted); *United States v. Mullins*, No. 2:17-CR-00012-25-JRG, 2022 U.S. Dist. LEXIS 189046, at *6-9 (E.D. Tenn. Oct. 17, 2022) (Although "district courts in this Circuit are split on this issue . . . The Sixth Circuit's analysis of § 3582(c)(1)(A)'s exhaustion requirement . . . indicates to this Court that issue-specific exhaustion is required") (citing *United States v. Alam*, 960 F.3d 831, 832-36 (6th Cir. 2020) (collecting cases); *United States v. Gonzalez*, No. 1:14-CR-144 (MAD), 2026 U.S. Dist. LEXIS 11360, at *10 n.1 (N.D.N.Y. May 22, 2026) (noting split within and among district courts in the Second Circuit but declining to decide the issue).

10

### 3.   Extraordinary and Compelling Circumstances

Mr. Johnson claims he is entitled to a reduced sentence on three grounds: (1) his belief that his advisory guideline range "might have been calculated wrong"; (2) his need to care for his sick mother and other family circumstances; and (3) his rehabilitative efforts while in custody. *Def.'s Mot.* at 3-6. The Government argues Mr. Johnson has not established extraordinary and compelling reasons warranting a reduction or that such a reduction is consistent with the Sentencing Commission's policy statements. *Gov't's Opp'n* at 8-10.

Although the statute does not define "extraordinary and compelling reasons," the Court is "guided by the plain meaning of those terms" and the Sentencing Commission's policy statements. *United States v. Canales-Ramos*, 19 F.4th 561, 566 (1st Cir. 2021); U.S. SENT'G GUIDELINES MANUAL app. C supp., Amend. 814 (U.S. SENT'G COMM'N 2023) (U.S.S.G.); *id.* § 1B1.13(b) (Categories of extraordinary and compelling bases that may warrant a sentence reduction, include: the defendant's (1) "medical circumstances," "age," "family circumstances," whether the defendant was the "victim of abuse" while in custody, "other reasons" similar in gravity, and if the defendant received an "unusually long sentence"). "'Extraordinary' means 'most unusual,' 'far from common,' and 'having little or no precedent.'" *Fernandez v. United States*, 608 U.S. ___, 146 S. Ct. 1292, 1302 (2026) (quoting *Extraordinary*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 807 (1976)). "'Compelling' means 'tending to convince or convert by or as if by forcefulness of evidence.'" *Id.* (quoting, *Compelling*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, at 463). Consistent with the

11

First Circuit's directive, the Court "conduct[s] a holistic inquiry . . . consider[ing] any complex of circumstances raised by [Mr. Jonhson] as forming an extraordinary and compelling reason warranting relief." *Duluc-Méndez*, 156 F.4th at 61 (quotations omitted).

### a.      Miscalculated Sentencing Guideline Range

Mr. Johnson first claims that his presentence investigation report's guideline calculation for his 144-month sentence under Count IV "was or might have been calculated wrong." *Def.'s Mot.* at 3. He suggests that his sentence is disproportionate to his offense and further challenges the four-point enhancement he received for possession of a firearm in connection with a felony offense, arguing that the Government cannot "show concrete evidence of [his] control over or possession" of the firearms related to his conviction because "the mere presence of fingerprints does not automatically imply possession" and thus did not support the four-point enhancement imposed at sentencing. *Id.* at 3-4.[2] The Government argues that Mr. Johnson's alleged sentencing errors do not constitute extraordinary and compelling

---

[2]      Mr. Johnson's motion states that he "intends to challenge[ ] the 4 point enhancements for death or bodily injury, for the 22 stolen firearms, [and] for the stolen firearms from J.T.'s store." *Id.* However, his argument only addresses the four-point enhancement for possession of a firearm in connection with a felony offense under § 2K1.2(b)(6)(B). Additionally, Mr. Johnson did not receive an enhancement for serious bodily injury, although he did receive a four-point enhancement because the offense involved between eight and twenty-four firearms and a two-point enhancement because the firearms were stolen, under § 2k2.1(b)(1)(B) and (b)(4)(A), respectively. *See Statement of* Reasons, Attach. 1, *Statement of Findings* ¶¶ 4-5. Mr. Johnson's reply does not clarify this discrepancy. Accordingly, to the extent Mr. Johnson alleges those two enhancements are also erroneous, he has not met his burden to demonstrate his entitlement to a reduced sentence. *See Curtis*, 2020 U.S. Dist. LEXIS 102045 at *12.

12

circumstances warranting his requested sentencing reduction, as contemplated by the Sentencing Commission's guidelines. *Gov't's Opp'n* at 8-9.

Given recent developments in the law concerning compassionate release by the Supreme Court, it is not clear whether Mr. Johnson may include an alleged sentencing error in his motion to reduce his sentence, rather than in a petition for habeas corpus. Although First Circuit precedent holds "that district courts have the discretion to review prisoner-initiated [sentence reduction] motions by taking [a] holistic, any-complex-of-circumstances approach," including claims of sentencing error, *United States v. Trenkler*, 47 F.4th 42, 49 (1st Cir. 2022) (citing *United States v. Ruvalcaba*, 26 F.4th 14, 27, 28 (1st Cir. 2022)), the Supreme Court's recent decision in *Fernandez v. United States* limited the reach of this precedent. 146 S. Ct. 1292.[3] However, the extent to which *Fernandez's* holding circumscribes First Circuit caselaw permitting a district court to consider sentencing errors in a motion for compassionate release remains unclear.

In *Trenkler*, the First Circuit rejected the same argument the Government raises here—that a sentencing error cannot be raised in a motion for compassionate release and instead must be presented in a petition for writ of habeas corpus. *Id.* at 47-51, 49 n.15. Because the Sentencing Commission has categorically excluded only "rehabilitation" from what a court may consider extraordinary and compelling and because "habeas and compassionate release are distinct vehicles for relief," the First

---

[3]    The same day the Supreme Court issued *Fernandez*, it also issued its ruling in *Rutherford v. United States*, 608 U.S. ___, 146 S. Ct. 1320 (2026), concluding that a nonretroactive change in sentencing law does not constitute extraordinary and compelling circumstances. *Rutherford's* holding does not implicate any issues presented by Mr. Johnson's motion.

Circuit was unpersuaded by the Government's "contention that [the defendant's] motion for compassionate release . . . is a habeas petition in disguise." *Id.* at 48-49.

In the First Circuit's view, "the compassionate release statute is addressed to the court's discretion . . . whether to exercise leniency based on an individualized review of a defendant's circumstances," which is distinct from a habeas petition requesting the Court "to recognize and correct what a defendant says is an illegal conviction or sentence." *Id.* at 48-49 ("Compassionate release is a narrow exception to the general rule of finality in sentencing") (citations omitted). From this, *Trenkler* reasoned that a district court may consider a sentencing error when evaluating a motion for compassionate release, but clarified that a sentencing error, without more, does not constitute an extraordinary or compelling reason justifying a sentence reduction. *Id.* at 48 ("[C]orrect application of the 'extraordinary and compelling' standard for compassionate release naturally precludes classic post-conviction arguments, without more, from carrying such motions to success").

In other words, *Trenkler* held that district courts could *consider* sentencing errors when evaluating a defendant's motion for compassionate release, but a sentencing error by itself could not *qualify* as an extraordinary and compelling justification for a reduced sentence without more. *Id.* at 48-49 ("The initial question of what may be *considered* in an 'extraordinary and compelling' determination by the district court is separate from the secondary, individualized question of what can actually *qualify* as extraordinary and compelling") (emphasis in original).

14

However, on May 28, 2026, the Supreme Court issued its decision in *Fernandez v. United States*, holding that a challenge to "the validity of a conviction through a compassionate release motion circumvents the exacting requirements of [28 U.S.C.] § 2255," and thus cannot be among the "extraordinary and compelling reasons" that justify compassionate release. 146 S. Ct. at 1300-1304; *id.* at 1304 ("The heartland 'extraordinary and compelling reasons' that might warrant an early release from prison—age, illness, a child left with no guardian—bear no resemblance to the grounds for relief under § 2255"). Additionally, the Court reasoned that because "collateral attacks on federal convictions are governed by 28 U.S.C. § 2255, which imposes significantly tighter procedural constraints than § 3582's minimal procedural requirements, to allow a motion for compassionate release to serve as a vehicle to collaterally attack a defendant's conviction would frustrate federal habeas's "reticulated scheme" and place the compassionate release statute "at cross-purposes" rather than "in harmony" with federal habeas. *Id.* at 1300-1302 (citations omitted).

In other words, when a defendant "attack[s] the validity of his confinement' and 'seeks either immediate release from that confinement or the shortening of its duration,' his claim belongs under the umbrella of" habeas, not compassionate release. *Id.* at 1305 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)). *Fernandez's* conclusion suggests that a defendant's motion for compassionate release challenging the supposed invalidity of his underlying conviction fails at *Trenkler* step one (reasons the court may *consider*), because the proper mechanism for raising such a challenge resides in habeas.

15

Yet it is unclear whether *Fernandez* entirely forecloses *Trenkler's* holding. *Fernandez* trained its reasoning and conclusion on challenges to the defendant's underlying conviction. The decision did not address whether its reasoning extends to sentencing errors. Moreover, whether a defendant's requested sentence reduction "challenges a conviction turns on the nature of the arguments presented." *Id.* at 1305 (citation omitted). For example, a motion for compassionate release based on a terminal illness "does not suggest that [the defendant's] conviction is invalid, but a motion "alleging problems with the underlying criminal investigation or trial . . . suggests that [the defendant's] conviction is flawed." *Id.*

Here, Mr. Johnson challenges a four-level enhancement he received at sentencing and further alleges that sentence is disproportionate, which does not appear to challenge the validity of his conviction. So the Court will consider his sentencing error arguments. *See Eulitt v. Dep't of Educ.*, 386 F.3d 344, 349 (1st Cir. 2004) ("Until a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority") *abrogated on other grounds*, *Carson v. Makin*, 596 U.S. 767 (2022).

Turning to Mr. Johnson's challenge to the four-level enhancement under § 2K1.1(b)(6)(B) for possession of a firearm in connection with a felony offense under Count IV, nothing in the record suggests the Court erred in applying that enhancement to his sentencing calculation. At sentencing, the Court concluded the four-level enhancement was appropriate because Mr. Johnson possessed a firearm in

connection with burglary and drug trafficking.  *See Sentencing Tr.* at 37:8-12.

Specifically, Mr. Johnson carried both cocaine base and a loaded firearm on his person

to complete a drug deal in a residential area with an undercover police officer.  As the

Court recounted at the hearing

> [O]n October 24, 2021, J.T. Reid, a federally licensed firearms dealer, reported to the Auburn Police Department that there had been a burglary at 5 a.m. in which numerous firearms were stolen. A video depicted a hooded, masked suspect wearing gloves who threw a large rock through J.T. Reid's front glass door. The suspect then climbed in, wearing a gray colored backpack. He headed to the firearms display case, and then to the high capacity magazine area. The suspect slipped and fell as he exited the building, and he dropped a firearm.

> When Auburn police arrived, they found one firearm in the grass at the side of Garfield Street and three in the tall grass nearby. The defendant stole a total of 22 firearms. Four were -- were recovered at the scene, one in Massachusetts, one from the defendant when he was arrested, and one in Brooklyn. That means that there are 15 firearms unaccounted for.

> The Court need not describe the very excellent detective work that led law enforcement to focus on the defendant, but it was impressive. One thing that law enforcement did do was [to] have an undercover officer contact the defendant and arrange to buy 1.75 grams of cocaine. And on October 28, 2021, the defendant showed up to make the deal and then ran from the police. They found 1.6 grams of crack in the defendant's sweatshirt pocket. And as he ran, he threw the gun, a loaded Glock pistol, that was located near a residence. And that Glock, of course, was stolen from J.T. Reid.

*Id.* at 44:11-45:12.  Mr. Johnson did not object to the Court's guideline calculation,

including the four-level enhancement under § 2K1.1(b)(6)(B).  *Id.* at 37:25-38:6; *Def.'s*

*Sentencing Memo.* at 9 (ECF No. 90) ("Tomas is not objecting to the Guideline

Calculations").

As for Mr. Johnson's claim that his guideline range was miscalculated because

"the mere presence of fingerprints" did not support the four-point enhancement

imposed at sentencing, the Court disagrees. *Id.* at 3-4. Mr. Johnson's four-level enhancement for possession of a firearm in connection with a felony offense was not based on fingerprinting. Indeed, his sentencing memorandum, the revised presentencing report, and the sentencing hearing transcript do not mention fingerprints at all. The Court therefore cannot conclude that Mr. Johnson has demonstrated his guideline range was miscalculated based on an unsupported four-level enhancement under § 2K1.1(b)(6)(B).

The Court is similarly unconvinced by Mr. Johnson's claim that his sentence is disproportionate to his offense conduct. The Court calculated Mr. Johnson's guideline range at 130 to 162 months of imprisonment. *Statement of Reasons*, Attach. 1, *Findings Affecting Sentencing* at 2. The Government recommended the Court impose an upwardly variant sentence of 180 months and Mr. Johnson requested a downward variance between 82 and 96 months. *Sentencing Tr.* at 25:12-25, 26:7-12. At the sentencing hearing, the Court "str[uck] a balance in between," sentencing Mr. Johnson to a 144-month period of incarceration. *Sentencing Tr.* at 53:19-24.

The single case Mr. Johnson cites to support his claim that he received a disproportionate sentence is a poor comparison to his own sentencing. *See United States v. Abbas*, 165 F.4th 659, 674 (1st Cir. 2026) (The defendant is "comparing incomparables"). Mr. Johnson points to the case of *United States v. Darrell Newton*, No. 1:17-cr-00073-JAW, 2021 U.S. Dist. LEXIS 48042 (D. Me. Mar. 15, 2021), a case that is markedly different from Mr. Johnson's. Convicted of one count of engaging in a conspiracy to distribute heroin and crack cocaine, Mr. Newton lead an extensive

18

drug trafficking organization, had a criminal history category IV, amassed a total offense level of 39, and faced a guideline range of 360 months to life.  *Id.* at *6-10. The Court sentenced Mr. Newton to 240 months of incarceration.[4]  *Id.* at *1.

By contrast, Mr. Johnson was convicted of being a felon in possession of a firearm, theft from a federally licensed firearms dealer, possession of a stolen firearm, and possession of crack cocaine with intent to distribute.  *J.* at 1.  Mr. Johnson's total offense level was 27 with a criminal history category of VI.  *See Findings Affecting Sentence* at 2.  These two defendants are not somewhat different from each other; they are markedly so.  *See Abbas*, 165 F.4th at 673 ("[A] genuine sentence disparity can only exist between two identically situated defendants") (quoting *United States v. Candelario*, 105 F.4th 20, 24 (1st Cir. 2024)).

Furthermore, his motion does not present the Court with any facts suggesting there is a disparity between his sentence and various national, circuit, and district averages for similar offenses so extreme as to constitute extraordinary and compelling circumstances.  *See United States v. Vázquez*, 793 F. Supp. 3d 423, 432-33 (D.P.R. 2025).  The Court cannot conclude that Mr. Johnson has shown that his sentence is disproportionate to his offense conduct or from similarly situated defendants.

Finally, Mr. Johnson's sentence is presumptively reasonable because it is within the applicable guideline range.  *Rita v. United States*, 551 U.S. 338, 347-56

---

[4]    President Joseph R. Biden issued Mr. Newton an Executive Grant of Clemency on January 17, 2025.  *See* Case No. 1:17-cr-00073-JAW-1, *Executive Grant of Clemency* at 33 (ECF No. 1182).

(2007); *Vázquez*, 793 F. Supp. 3d at 433. These purported miscalculations are thus not "similar in gravity" to the other bases set forth by the Sentencing Commission in U.S.S.G. §§ 1B1.13(b)(1)-(4). *See* U.S.S.G. § 1B1.13(b)(5). Nor can Mr. Johnson show that he received an unusually long sentence of which he has already served ten years of imprisonment. U.S.S.G. §§ 1B1.13(b)(6), (c).

Accordingly, because Mr. Johnson has not shown that the Court somehow erred in calculating his advisory guideline range, and because nothing in the record indicates that the Court would have imposed a lesser sentence absent the alleged errors identified by Mr. Johnson, his "putative sentencing error[s] [are] insufficient to warrant compassionate release." *United States v. Canales-Ramos*, 19 F.4th at 568; *see also United States v. Veloz*, No. 12-10264-RGS, 2025 U.S. Dist. LEXIS 121470, at *3 (D. Mass. June 26, 2025) (A mere "suggestion of error in calculating the correct length of a sentence does not qualify as an extraordinary or compelling reason justifying compassionate release").

### b.    Family Circumstances

Next, Mr. Johnson claims that he needs to care for his sick mother and to attend to other difficult family matters, and family circumstances constitute extraordinary and compelling circumstances warranting a sentence reduction. *Def.'s Mot.* at 5. The Government argues Mr. Johnson has failed to meet his burden to demonstrate his family circumstances constitute extraordinary and compelling circumstances. *Gov't's Opp'n* at 9-10.

The Sentencing Commission's policy statement provides for a sentence reduction based on family circumstances, stating, in relevant part, that "incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" is sufficient to establish an extraordinary and compelling circumstance. U.S.S.G. § 1B1.13(b)(3)(C). As courts have explained, "[i]ncapacitation in [this] context is a serious injury, or a debilitating physical illness that results in the incarcerated individual's spouse or registered partner being completely disabled, meaning they cannot carry on any self-care and are totally confined to a bed or chair; or [a] severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected . . . mental capacity or function), but may not be confined to a bed or chair." *United States v. Simpson*, Nos. 1:04-cr-00025-SDN, 2:03-cr-00096-SDN, 2025 U.S. Dist. LEXIS 209554, at *5 (D. Me. Oct. 24, 2025) (quotation omitted). Courts have also interpreted the term "only available caregiver" to mean "there is no other family member or adequate care option that is able to provide primary care." *Id.* (quotation omitted).

Although the Court is sympathetic to Mr. Johnson's family circumstances, the Court cannot conclude he has met his burden to establish his family circumstances are so extraordinary and compelling to warrant a sentence reduction. Here, Mr. Johnson has not provided the Court with sufficient information to assess whether his mother is "incapacitat[ed]" and whether he "would be the only available caregiver for" his mother. *See* U.S.S.G. § 1B1.13(b)(3)(C); *see also United States v. Talmer*, No. 2:20-cr-00084-JAW-2, 2025 U.S. Dist. LEXIS 5805, at *71-74 (D. Me. Jan. 13, 2025)

21

(rejecting request for release based on family circumstances where the defendant failed to demonstrate that any family members were incapacitated and that she is the only available caretaker).

### c.     Rehabilitation

Pursuant to U.S.S.G. § 1B1.13(d), "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *See also* 28 U.S.C. § 944(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for granting a sentence reduction).   However, the Guidelines provide that "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.*

The Court commends Mr. Johnson's efforts to rehabilitate himself and prepare for a productive life following release.  The Court is encouraged that Johnson has endeavored to spend his period of incarceration productively, and although it does not provide an independent ground for his release, strongly encourages him to continue to do so.  Furthermore, even when considering Mr. Johnson's rehabilitation in combination with his family circumstances, he has not shown extraordinary and compelling reasons for reducing his sentence. *See United States v. Rivera-Rodríguez*, 75 F.4th 1, 27 n.31 (1st Cir. 2023) ("[R]ehabilitation, when combined with other extraordinary and compelling reasons" may "serv[e] as one of a court's bases for granting compassionate release").

Accordingly, even when considering his separate grounds holistically, the Court concludes Mr. Johnson has not met his burden to establish extraordinary and compelling circumstances warranting a sentence reduction and he is thus ineligible for his requested sentence reduction. As explained, having concluded that Mr. Johnson has not shown extraordinary and compelling circumstances, the Court need not determine whether his requested sentence reduction is consistent with the Sentencing Commission's applicable policy statements or consider the § 3553(a) factors. *See Duluc-Méndez*, 156 F.4th at 60 (instructing district courts to turn to "'the relevant [section] 3553(a) sentencing factors,'" if the defendant has satisfied the initial criteria for compassionate release: (1) showing extraordinary and compelling reasons warranting a sentence reduction and (2) that the sentence reduction is consistent with applicable Sentencing Commission policy statements) (citing *Burgos-Motes*, 142 F.4th at 57) (alteration in original); *id.* ("A district court may grant compassionate release only if the defendant satisfies each of these steps") (citing *D'Angelo*, 110 F.4th at 48); 18 U.S.C. § 3582(c)(1)(A). The Court therefore dismisses Mr. Johnson's motion to reduce his sentence without prejudice.

### B.      Motion to Pause Restitution Payments

####      1.      Applicable Law

"A sentence that imposes an order of restitution is a final judgment notwithstanding the fact that such a sentence can subsequently be . . . adjusted" in three narrow circumstances. 18 U.S.C. § 3664(o)(1)(D). First, if the defendant notifies "the court and the Attorney General of any material change in the defendant's

23

economic circumstances that might affect the defendant's ability to pay restitution," the sentencing court may "adjust the payment schedule . . . as the interests of justice require." 18 U.S.C. § 3664(k). Second, if there is "[a] judgment for a fine which permits payments in installments," the court may, upon notice from the defendant "of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay the fine," "adjust the payment schedule . . . as the interests of justice require." 18 U.S.C. § 3572(d)(3). Finally, "[u]pon a finding that the defendant is in default on a payment of a fine or restitution, the court may . . . enter or adjust a payment schedule." 18 U.S.C. § 3613A(a)(1).

## 2.    Tomas Johnson's Motion to Pause Restitution Payments

Although Mr. Johnson's motion is not entirely clear, the Government explains that his motion appears to relate to the $25 quarterly payments Mr. Johnson pays through BOP's Inmate Financial Responsibility Program (IFRP). *Gov't's Restitution Opp'n* at 1-2. The Government states that Mr. Johnson's $16,580.83 in restitution remains outstanding, and, to date, he has paid a total of $175.00 in IFRP quarterly payments towards his $400 special assessment. *Id.* at 2-3. The Government argues Mr. Johnson's motion to pause his restitution payment should be denied for two reasons: (1) the statute does not authorize Mr. Johnson's requested relief, and (2) to the extent Mr. Johnson seeks to challenge his quarterly IFRP payment obligation, he must first exhaust his administrative remedies and then file a petition for habeas corpus in the appropriate jurisdiction. *Id.* at 3-6.

24

As the Government points out in its opposition and as the plain text of the relevant statutes shows, the Court's authority extends only to adjusting a payment schedule, if one were imposed, and only upon a material change in Mr. Johnson's financial circumstances. *See United States v. Hyde*, 497 F.3d 103, 108 (1st Cir. 2007); 18 U.S.C. § 3664(o)(1)(D). Because the Court required Mr. Johnson to pay his restitution in a lump sum immediately or, failing that, during his term of imprisonment, there is no payment schedule for the Court to adjust. *See J.* at 7; *United States v. Richards*, Nos. 2:15-cr-00168-NT; 2:16-cr-00001-NT, 2024 U.S. Dist. LEXIS 117204, at *3-4 (D. Me. July 3, 2024). Furthermore, the record before the Court does not demonstrate a material change in Mr. Johnson's economic circumstances that warrants an adjustment of his restitution. *Richards*, 2024 U.S. Dist. LEXIS 117204 at *4; *see also United States v. Fenton*, 577 F. Supp. 2d 458, 459 (D. Me. 2008) (holding there is no basis for a modification pursuant to 18 U.S.C. § 3664(k) where "the Court does not find any material change in the Defendant's economic circumstances that affects the Defendant's ability to pay restitution").

Finally, to the extent Mr. Johnson challenges his obligation to make IFRP restitution payments on a quarterly basis while incarcerated, this Court lacks jurisdiction to review his motion. Instead, after exhausting his administrative remedies, Mr. Johnson must file a petition for habeas corpus pursuant to 28 U.S.C. § 2241 in the district where he is incarcerated. *Richards*, 2024 U.S. Dist. LEXIS 117204 at *4-5; *United States v. Reeves*, No. 1:05-cr-00047-JAW, 2015 U.S. Dist. LEXIS 13657, at *11 (D. Me. Feb. 4, 2015) (citing *Fenton*, 577 F. Supp. 2d at 459).

Based on Mr. Johnson's filing, at the time of his motion, he was incarcerated at FCI Lewisburg in Lewisburg, Pennsylvania, which is not within the District of Maine. *See Def.'s Mot.*, Attach. 1, *Envelope.*

The Court therefore must dismiss Mr. Johnson's motion.

## IV.   CONCLUSION

The Court DISMISSES without prejudice Tomas Johnson's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(B) for Expansion of "Other Reasons" Warranting a Sentence Reduction (ECF No. 119).   The Court also DISMISSES without prejudice Tomas Johnson's Motion to Pause Restitution Payments (ECF No. 124).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 10th day of July, 2026.